IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHIA-HUI CHANG and PAI-CHI TSAI, | : | |
| Plaintiffs/Appellees, | : | |
| v. | : | |
| | : | |
| MARIO MARTINEZ AGUILA, | : | |
| Appellant | : | |
| v. | : | |
| | : | |
| LILJANA SINOJMERI, et al. | : | No. 25-cv-06033-GAM |
| Defendants. | : | |

**PLAINTIFFS' RESPONSE TO MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDERS**

Plaintiffs/Appellees, CHIA-HUI CHANG and PAI-CHI TSAI ("Plaintiffs"),[1] by and through their undersigned counsel, hereby respectfully submit this response to the Motion of Mr. Mario Martinez Aguila ("Aguila") for Leave to Appeal Interlocutory Orders. (Bk. A.P. Case No. 24-00088 ECF 82), which Motion was improperly brought before the Bankruptcy Court. This opposition is being filed in the District Court pursuant to F.R.Bank.P. 8004(b)(2).

**SUMMARY OF THE ARGUMENT**

1.   Aguila directs the instant motion seeking leave to appeal interlocutory orders to the Bankruptcy Court, and Aguila notices this motion for a hearing before the Bankruptcy Judge assigned to this adversary proceeding in Bankruptcy Court. (Bk. A.P. Case No. 24-00088 ECF 83.) However, such motion should instead have been directed to the Court having statutory authority to decided it, which is the District Court. See 28 U.S.C. § 158(a)(3); In re Rodriguez-Martinez, 541 B.R. 539, 541 (D.P.R. 2015) ("Interlocutory orders issued by bankruptcy judges, such as the present one, may be appealed *only where the district court grants leave to appeal*, a

---

[1] Names and abbreviations used herein are consistent with those used in Plaintiffs' cross-motion seeking enforcement of the Subpoena. (See Case No. 24-00088 ECF 32.)

decision wholly within said court's discretion." (citing 28 U.S.C. § 158(a)(3)) (emphasis added).). Aguila's motion should be denied for that reason.

2. Even if the Bankruptcy Court were the Court authorized to decide this issue, the applicable legal standards do not support Aguila's motion. Insofar as this motion concerns appellate review of this Court's Order compelling Aguila to comply with his subpoena, its Order denying his motion for reconsideration, and its Order finding Aguila in contempt, the rules already adequately set forth Aguila's right to appeal and seek review. There is no need for this Court or any Court to grant leave or certify Orders for appeal.

3. Aguila also wishes to obtain immediate appellate review of this Court's Order denying his motion for a protective order. Certifying that Order for immediate appeal would subvert the rules intended to prevent piecemeal litigation, and there is no other compelling reason to depart from the ordinary rules prohibiting the appeal of interlocutory orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

4. Plaintiffs served a subpoena upon Aguila dated May 27, 2025 (the "Subpoena"), together with fees required by law, directing Aguila to attend a deposition on June 19, 2025, and to produce documents relevant to the fraudulent transfers at issue in this adversary proceeding and Debtor's bankruptcy case. (Bk. A.P. Case No. 24-00088 ECF 28 ¶ 4; Bk. A.P. Case No. 24-00088 ECF 28-2.)

5. Aguila filed a notice of motion to quash the Subpoena on June 20, 2025, and Plaintiffs filed a cross-motion to enforce the Subpoena and for an award of fees and costs. (Bk. A.P. Case No. 24-00088 ECF 32; Bk. A.P. Case No. 24-00088 ECF 39.) The underlying merits of those motions were addressed at length in Plaintiffs' prior submissions, and those submissions are incorporated herein by reference. (See id.)

6. The Court's Order dated August 12, 2025 ("08/12/25 Order") denied Aguila's motion to quash, and granted Plaintiffs' cross-motion to enforce the Subpoena. (Bk. A.P. Case No. 24-00088 ECF 44.) The 08/12/25 Order provided, in relevant part, that Aguila was ordered to appear upon notice of a re-scheduled deposition, and that Aguila shall produce documents requested in the Subpoena one (1) week prior to such deposition. (Id.) Plaintiffs were awarded fees in the amount of $23,922.50 in connection with these motions. (Bk. A.P. Case No. 24-00088 ECF 89.)

7. Aguila filed notice of a motion for reconsideration of the 08/12/25 Order on August 25, 2025. (Bk. A.P. Case No. 24-00088 ECF 46; Bk. A.P. Case No. 24-00088 ECF 49.) Aguila filed a motion for a protective order on September 12, 2025. (Bk. A.P. Case No. 24-00088 ECF 58.) Those motions were denied. (Bk. A.P. Case No. 24-00088 ECF 72; Bk. A.P. Case No. 24-00088 ECF 71.)

8. Plaintiffs filed a motion for contempt against Aguila on September 11, 2025, which was granted by Order dated October 9, 2025. (Bk. A.P. Case No. 24-00088 ECF 56; Bk. A.P. Case No. 24-00088 ECF 77.) Per diem sanctions in the amount of $500 were awarded to Plaintiffs, as well as attorney fees, the amount of which has not been decided yet. (Id.)

9. Aguila's instant motion is replete with incorrect statements concerning the history of these proceedings.

10. Aguila now asserts that he filed his motion to quash the subpoena on June 10, 2025, and that such motion was timely. (Bk. A.P. Case No. 24-00088 ECF 82, at 2.) That has been proven not to be true. Aguila filed his notice of motion to quash the Subpoena on June 20, 2025, which was after the deadline to appear at a deposition as stated in the Subpoena. (Bk. A.P.

Case No. 24-00088 ECF 28; Bk. A.P. Case No. 24-00088 ECF 29; Bk. A.P. Case No. 24-00088 ECF 30; Bk. A.P. Case No. 24-00088 ECF 39.)

11. Aguila misstates that the subpoena served upon him requested records from Aguila's limited liability companies. In fact, Plaintiffs were unaware that Aguila held any interest in limited liability companies when the subpoena was served. As discussed below, Aguila made untimely objections to the subpoena using vague statements about how it would affect limited liability companies, which contradicted Aguila's arguments in his motion to quash.

12. In the instant motion, Aguila asserts that his motion to quash was based upon the subpoena requiring Aguila to "produce records from approximately ten (10) unrelated business entities." (Bk. A.P. Case No. 24-00088 ECF 82, at 2.) However, Aguila made no mention of any such entities in Aguila's motion to quash. (Bk. A.P. Case No. 24-00088 ECF 28.) Aguila made conclusory statements about (LLCs) for the first time at the hearing on Aguila's motion to quash, and said nothing about the number or identity of such entities. (Bk. A.P. Case No. 24-00088 ECF 53.) These statements also contradicted Aguila's prior argument that the subpoena burdened Aguila because of his position at a private equity firm. (Bk. A.P. Case No. 24-00088 ECF 36 at 4-5.)

13. In the instant motion, Aguila asserts that his "sole connection to this matter is that he is Plaintiff's neighbor." (Bk. A.P. Case No. 24-00088 ECF 82, at 2.) In fact, Aguila's connection to this case derives from the fact that Aguila possesses substantial evidence weighing directly on the fraudulent transfers at issue in this case, but Aguila has decided to disobey a subpoena and commit contempt of Court instead of producing that evidence. (Bk. A.P. Case No. 24-00088 ECF 56; Bk. A.P. Case No. 24-00088 ECF 66.)

14. In the instant motion, Aguila asserts that he "engaged in good faith negotiations and agreed to produce relevant documents before the hearing." (Bk. A.P. Case No. 24-00088 ECF 82, at 2.) Actually, Aguila proposed providing some limited documents before such hearing, but conditioned such proposal on Plaintiffs agreeing to waive their rights to a deposition and to obtain production of a trove of other relevant documents. (Bk. A.P. Case No. 24-00088 ECF 53.)

15. In the instant motion Aguila asserts that the Bankruptcy Court found that Aguila's "corporate documents with dozens of contractors were not confidential or proprietary". (Bk. A.P. Case No. 24-00088 ECF 82, at 5.) In fact, the Court denied Aguila's motion for a protective order because Aguila failed to properly meet and confer, and failed to follow other procedural prerequisites. The Court pointed out that Plaintiffs were continuing to make overtures (memorialized in writing) to enter into a stipulation for a protective order if only Aguila did not condition such discussions on Plaintiffs agreeing to waive Plaintiff's rights to recover fees granted by a prior Order.

## DISCUSSION

### I. APPELLATE JURISDICTION OVER BANKRUPTCY MATTERS

16. Appellate jurisdiction over bankruptcy matters extends only to "final judgments, orders and decrees". 28 U.S.C. 158(a). The prohibition on appeals of interlocutory orders prevents "piecemeal, prejudgment appeals that would undermine efficient judicial administration and encroach upon the prerogatives of [trial] judges." <u>Sweetapple v. Asset Enhancement, Inc. (In re Asset Enhancement, Inc.)</u>, 2023 WL 8385087 (11th Cir. 2023) (<u>quoting</u> <u>Ritzen Grp., Inc. v. Jackson Masonry</u>, LLC, 140 S. Ct. 582, 586 (2020)).

17. An inability to pursue an immediate appeal of interlocutory orders "will often be unsatisfying, but our litigation system has long accepted that certain burdensome rulings will be 'only imperfectly reparable' by the appellate process." Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1689 (2015) (quoting Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 872 (1994)). "That prospect is made tolerable by the Court's confidence that bankruptcy courts rule correctly most of the time and by the existence of several mechanisms for interlocutory review, *e.g.,* §§ 158(a)(3), (d)(2), which 'serve as useful safety valves for promptly correcting serious errors' and resolving legal questions important enough to be addressed immediately." Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 111 (1985).

## II.  APPEALABLE CONTEMPT ORDERS

18. Finality of orders entered in bankruptcy adversary proceedings do not differ from finality in orders entered in ordinary federal civil actions under 28 U.S.C. § 1291. Accordingly, "an order in an individual adversary proceeding" should be viewed like an order in any other "routine" civil proceeding, in that it "is not final unless it 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" In re Truong, 513 F.3d 91, 93-94 (3d Cir. 2008) (quoting Bethel v. McAllister Bros., Inc., 81 F.3d 376, 381 (3d Cir. 1996) (emphasis added)); Belli v. Temkin (In re Belli), 268 B.R. 851, 855 (9th Cir. BAP 2001).

19. Whether a decision is "final" for purposes of appeal depends on its effects. Marcus v. Twp. of Abington, 38 F.3d 1367, 1370 (3d Cir. 1994). "Ordinarily, a final decision will have two effects.  First, the decision will fully resolve all claims presented to the district court.  Second, after the decision has been issued, there will be nothing further for the district court to do." Aluminum Co. of Am. v. Beazer East, Inc., 124 F.3d 551, 557 (3d Cir. 1997) (citing Catlin v. United States, 324 U.S. 229, 233 (1945)).

20.     When a Court orders a witness — whether a party to an underlying litigation, a subject or target of a grand jury investigation, or a complete stranger to the proceedings—to testify or produce documents, its order generally is not considered an immediately appealable final decision.  See United States v. Ryan, 402 U.S. 530, 532–34 (1971); Cobbledick v. United States, 309 U.S. 323, 326-329 (1940); Alexander v. United States, 201 U.S. 117, 118–22 (1906). It is well settled that a witness who "seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order."  Church of Scientology of Cal. v. United States, 506 U.S. 9, 18 n.11 (1992) (citing Ryan, 402 U.S. 430); Cobbledick, 309 U.S. at 326–29; Alexander, 201 U.S. at 118–22; DeMasi v. Weiss, 669 F.2d 114, 121–23 (3d Cir. 1982).  A contempt order is itself immediately appealable because it is a final judgment imposing penalties on the willfully disobedient witness in what is effectively a separate proceeding. Id.

21.     Requiring a person who objects to a disclosure order to "refuse to comply, be subjected to sanctions in contempt, and then appeal from the sanctions . . . [,] puts the objecting person's sincerity to the test by attaching a price to the demand for immediate review." Wilson v. O'Brien, 621 F.3d 641, 643 (7th Cir. 2010).  It forces the objector to weigh carefully the likelihood of success of its challenge to the underlying disclosure order against the seriousness of the sanctions it would face — whether incarceration, a hefty monetary fine, or some other penalty — if it disobeys the order to disclose.  It also forces the objector to assess the importance it attaches to avoiding the ordered disclosure and protecting any associated privileges.

22.     Aguila argues that the Order of contempt entered against him is immediately appealable as a final order. To the extent that this may be true, it just proves that these are not grounds for a motion seeking leave to appeal. To the extent that Aguila wants an advisory

opinion on the appealability of the Order of contempt, it is not appropriate for the Court to give legal advice to litigants in the form of advisory opinions. Erwin Chemerinsky, Federal Jurisdiction 46-55 (6th ed. 2012).

### III.  LEAVE TO APPEAL INTERLOCUTORY ORDERS

23. An interlocutory order may be appealed only with leave of the Appellate Court. See 28 U.S.C. § 158(a)(3) (providing that a district court shall have jurisdiction to hear appeals from interlocutory orders but only "with leave of the court"); In re Belli, 268 B.R. 851, 856 (B.A.P. 9th Cir. 2001).

24. "Interlocutory appeals in bankruptcy cases should be the exception, rather than the rule [as] interlocutory appeals contravene the judicial policy opposing piecemeal litigation and cause delay and disruption." In re Energy Conversion Devices, Inc., 638 B.R. 81, 89 (E.D. Mich. 2022). Hence, appellants must make a showing of exceptional circumstances. Id.; In re Rodriguez-Martinez, 541 B.R. 539, 541 (D.P.R. 2015) ("[T]he First Circuit has instructed courts to grant leave sparingly and only in exceptional circumstances.") (internal citation omitted); Arochem Corp. v. Arochem Corp., 198 B.R. 425, 427 (D. Conn. 1996) ("'[E]xceptional circumstances' must exist that warrant an interlocutory appeal."), aff'd., In re Arochem Corp., 176 F.3d 610 (2d Cir. 1999); In re Maison Royale LLC, 2024 WL 2699994 at *5 (E.D. La. May 23, 2024) ("[D]istrict courts reviewing bankruptcy appeals are cautioned against reviewing interlocutory orders unless in 'exceptional circumstances.'"). In reviewing a First Circuit BAP case, the Supreme Court noted: "[w]hile discretionary review mechanisms such as these [§§ 1292(b) and 158(d)] 'do not provide relief in every case, they serve as useful safety valves for promptly correcting serious errors' and addressing important legal questions." Bullard v. Blue

Hills Bank, 575 U.S. 496, 507 (2015) (citing Mohawk Industries, Inc v. Carpenter, 558 U.S. 100, 111 (2009)).

25.     The First Circuit BAP recognized that "Section 158 provides no express criteria to guide our discretion, but most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under § 1292(b)." In re Bank of New England Corp., 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998). In re Paragon Offshore PLC, 2020 WL 1815550, at *2 (Del. April 9, 2020) (District Court in the Third Circuit applying the Section 1292(b) standards to a motion under Section 158).

26.     Leave will be granted only when: (1) it involves a controlling question of law; (2) a substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. In re Martinez, 541 B.R. 539 (D.C.R. 2015) (denying leave for interlocutory appeal on an order denying a debtor's application to employ her former attorney as the notary public for sale of debtor's property because there was no substantial ground for difference of opinion); In re Maison Royale, LLC, 2024 WL 2699994, at *16 (E.D. La. May 23, 2024) (denying leave to appeal on an order denying a motion to dismiss because it involved fact-intensive inquiries and disputes that could not be characterized as a question of pure law and would not reduce the amount of litigation).

### IV.     LACK OF GROUNDS FOR LEAVE TO IMMEDIATE APPEAL

27.     To the extent that any of the Orders Aguila seeks to challenge is interlocutory, particularly the Order denying Aguila's motion for a protective order, grounds for leave to immediately appeal do not exist.

28.     The Subpoena served upon Aguila was reasonably tailored to elicit evidence necessary to evaluate the Fraudulent Transfers at issue in this adversary proceeding and affecting

Debtor's bankruptcy estate. (Bk. A.P. Case No. 24-00088 ECF 32; Bk. A.P. Case No. 24-00088 ECF 33; Bk. A.P. Case No. 24-00088 ECF 39.) Aguila attempted to mischaracterize such Subpoena in his motion to quash, in an effort to make the Subpoena seem objectionable. (See id.) Aguila also made unsupported, conclusory statements about the burden imposed upon him by the Subpoena, and then Aguila made vague, inconsistent, and untimely assertions about how such Subpoena would affect unspecified "LLCs" in which Aguila allegedly held an interest. (See id.)

29. Aguila's motion for a protective order, likewise, included various conclusory statements which made it impossible to determine the extent to which any of the information Aguila holds which is responsive to the Subpoena warrants any confidentiality or other protection. (Bk. A.P. Case No. 24-00088 ECF 63.) That motion was also procedurally improper for a variety of reasons, including that Aguila did not satisfy Aguila's obligation to meet and confer prior to bringing it. (See id.)

30. None of Aguila's challenges to the Subpoena or Orders affecting him implicates any novel question of law. Each of Aguila's arguments involves decisions falling squarely within the discretion of the Bankruptcy Court, and each involves fact-intensive inquiries relating to Aguila's vague, mutually inconsistent, and unsupported objections. None of this counsels in favor of granting leave for immediate appeal. See In re Maison Royale, LLC, 2024 WL 2699994, at *16.

**CONCLUSION**

31. Based upon the foregoing, Plaintiffs respectfully request that Aguila's Motion for Leave to Appeal Interlocutory Orders be denied in its entirety.

**LOCAL BANKRUPTCY RULE 9014 CONSENT**

32.    Plaintiffs consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

                                                  WETZEL GAGLIARDI FETTER & LAVIN LLC

Dated: October 30, 2025        By: /s/John A. Gagliardi
                                                  John A. Gagliardi, Esquire
                                                  *Attorneys for Plaintiffs*
                                                  122 South Church Street
                                                  West Chester, Pennsylvania 19382
                                                  Tel.: 484-887-0779
                                                  Fax: 484-887-8763
                                                  jgagliardi@wgflaw.com