**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHIA-HUI CHANG** *et al.* | : | |
| *Plaintiffs & Appellees* | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-6033** |
| | : | |
| **LILJANA SINOJMERI** *et al.* | : | |
| *Defendants* | : | |
| | : | |
| | : | |
| **MARIO MARTINEZ AGUILA** | : | |
| *Appellant* | : | |

**McHUGH, J.**                                                                 **July 15, 2026**

**MEMORANDUM**

This is a discovery dispute on appeal from the United States Bankruptcy Court for the Eastern District of Pennsylvania. In an adversary proceeding, Plaintiffs, Appellees here, Chia-Hui Chang and Pai-Chi Tsai ("Plaintiffs") sought to recover debts allegedly owed to them by Defendant Liljana Sinojmeri and her business collaborators ("Defendants"), whom the Plaintiffs believe committed fraudulent transfers to evade their creditors. To discover possible aliases used in those transfers, Plaintiffs served a subpoena on the Appellant, Mario Martinez Aguila ("Martinez"),[1] whom Plaintiffs understood had employed Defendants around the time of the bankruptcy filing.

Martinez has resisted the subpoena for over a year. His methods have included filing a series of motions to quash or modify the subpoena and impose a restrictive protective order. The Bankruptcy Court rejected Martinez's motions and ultimately ordered contempt sanctions and

---

[1] The case's caption and most of the materials below refer to the Appellant as "Aguila," but on appeal he refers to himself as "Martinez." Out of respect for his decision and based on my understanding of Spanish-language surnames, I will refer to him as Martinez as well.

attorneys' fees against him for his overall non-compliance. He now appeals the Bankruptcy Court's orders around the subpoena, focusing his issues on the order denying his Motion to Quash and the order granting contempt sanctions and attorneys' fees. On each issue Martinez raises, I will affirm the Bankruptcy Court.

## I.    Factual Record

This litigation began when Plaintiffs hired Defendants' company, American Steel Contractors ("ASC"), to work on Plaintiffs' house, after which Plaintiffs say Defendants committed extensive fraud. *See* Appellee's App. at 46-47, ECF 15-1. Plaintiffs first sued Defendants in Pennsylvania state court. *See id*. Two years later, ASC filed for Chapter 7 bankruptcy in the Bankruptcy Court of the Eastern District of Pennsylvania. *See id.* at 48-49.

Defendants' bankruptcy filings represented that Defendant Sinojmeri had 100% ownership of ASC, that the company had a value of $0, and therefore that she had no assets to fulfill its debts. *See* Appellant's App. at 139-42, ECF 13-1. Despite this claimed insolvency, Plaintiffs observed that Defendants, supervised by Defendant Sinojmeri's son-in-law Ilir Sevi, had continued a monthslong construction project on the home of their next-door neighbor, Mario Martinez Aguila. *See* Appellee's App. at 47.

Plaintiffs then filed an adversary proceeding in the Bankruptcy Court seeking to prevent discharge of Defendants' debts, alleging that the Defendants had committed some number of fraudulent transfers, shifting the original company's money and client lists among various business aliases to hide it from creditors including the Plaintiffs. *See id.* at 51.

To investigate Defendants' potential aliases, Plaintiffs served a subpoena on Martinez based on the work they had seen Defendant Sinojmeri's son-in-law doing at Martinez's home. *See id.* at 53. The subpoena sought 11 forms of records:

1. A complete copy of all documents, as defined below,[2] relating to communications with Ilir Sevi, Liljana Sinojmeri, American Steel Contractors LLC (hereafter "ASC"). or any person or entity affiliated with any of the foregoing.

2. A complete copy of all documents relating to any agreement between: (1) you and/or any person or entity associated with you: and (2) ASC, Ilir Sevi, Liljana Sinojmeri, and/or any other person ever associated with ASC, Ilir Sevi, or Liljana Sinojmeri: whether or not involving construction services.

3. A complete copy of all documents relating to services performed for you and/or any person or entity associated with you, by ASC, Ilir Sevi, Liljana Sinojmeri, and/or any other person ever associated with ASC: whether or not involving construction services.

4. A complete copy of all documents relating to services performed for you and/or any person or entity associated with you. relating to construction services within the past five (5) years.

5. A complete copy of all documents relating to payments or other consideration, financial transfers, remuneration of any kind, or gifts provided in connection with services referenced in paragraphs (3) and (4), above.

6. A complete copy of all documents relating to payments or other consideration, financial transfers, remuneration of any kind, or gifts provided by you or any person associated with you to ASC, Ilir Sevi, Liljana Sinojmeri, and/or any other person ever associated with ASC, llir Sevi, or Liljana Sinojmeri; whether or not involving construction services.

7. A complete copy of all documents relating to communications with Chia-Hui (Charlene) Chang or Pai-Chi (Patrick) Tsai , or with their attorney(s) or any other person associated with them.

8. A complete copy of all documents relating to communications concerning any court

---

[2] [The subpoena's Footnote 1 defines "documents" to] "include, without limitation, computer disks and/or tapes, and copies thereof and any data contained or stored on said computer disks and/or tapes, and copies thereof, whether copied or transferred to other disks, tapes, hard drives, hard paper copies or other formats, text messages, E-Mail, including records or hard copies of E-mail records, correspondence, reports, memoranda, notes. drafts, notations or any sort of conversation, telephone calls, meetings or other communications, diaries, studies, directives, bulletins, checks (front and reverse), drawings of any nature, photographs, notebooks, logs, financial statements, ledger and journal entries, books of account, vouchers and deposit slips, invoices, shipping documents, receipts, files, press releases and any other writings regardless or the manner in which produced, whether handwritten, typed, printed or produced by any other process, including records or any telephone conversations or recordings by electronic or dictating equipment and videotapes, and in the case of electronic documents, including original files in native formats with metadata."

proceedings. demands, claims, or disputes involving any of the following persons: ASC, Ilir Sevi, Liljana Sinojmeri, Chia-Hui (Charlene) Chang or Pai-Chi (Patrick) Tsai.

9.  A complete copy of all documents evidencing or relating to the relationship between Ilir Sevi and ASC.

10. A complete copy of all documents evidencing or relating to the relationship between ASC and Liljana Sinojmeri.

11. A complete copy of all documents evidencing or relating to the finances of ASC, Ilir Sevi, or Liljana Sinojmeri.

Appellant's App. at 124-25, ECF 13-1.

Since then, Martinez has fought compliance with the subpoena. He has refused to attend multiple scheduled depositions despite court orders. *See, e.g.*, *id.* at 225, 247-48, 358-60. And he filed a procession of motions to quash or restrict the subpoena, including, most relevant here, a Motion to Quash and a Motion for a Protective Order. *See generally* Appellant's App. at i-iv (overviewing opposition to the subpoena). The Bankruptcy Court rejected each of these motions in a mix of orders and rulings from the bench, and ultimately found Martinez in contempt, ordering him to pay $500 per day of noncompliance in sanctions, as well as $23,922.50 in attorneys' fees payable to Plaintiffs. *See id.* at 175 (denying Motion to Quash); *id.* at 297-302 (denying Motion for Protective Order and Motion for Reconsideration and granting Motion for Contempt); *id.* at 358-70 (reviewing the course of litigation over the subpoena in explaining the decision to impose contempt sanctions and award attorneys' fees); *id.* at 325 (authorizing attorneys' fees).

In October and November of 2025, Martinez first appealed these orders. *See id.* at 303-04, 326.[3] I later ordered all issues on appeal consolidated under this case number. *See* ECF 18.

---

[3] In the months since this Appeal reached this Court, the Bankruptcy Court has dismissed the Plaintiffs' underlying adversary action. *See* Order, No. 24-10899-AMC at ECF 214. But the Bankruptcy Court reserved jurisdiction over this appeal. *See id.* The same Order vacated as moot Martinez's obligations to appear for a rescheduled deposition

## II.    Standard of Review

28 U.S.C. § 158(a) tasks district courts with hearing appeals of bankruptcy courts' final

orders.[4]  The standard for each of the rulings reviewed in this consolidated appeal is whether there

was an abuse of discretion.[5]  An abuse of discretion can include "a clearly erroneous finding of

fact, an errant conclusion of law, or an improper application of law to fact."  *Int'l Union, UAW v.*

*Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987).  This review is "highly deferential."  *Garrett v.*

*Wexford Health*, 938 F.3d 69, 96 (3d Cir. 2019).

## III.    Discussion

Martinez presents four issues on appeal: 1) whether the court's analysis of his undue burden

argument neglected the heightened protection owed  to non-parties in a discovery dispute; 2)

whether the subpoena's scope violates Federal Rule of Civil Procedure 26(b)(l) as incorporated by

Federal Rule of Bankruptcy Procedure 7026; 3) whether the court erred in rejecting Martinez's

argument that the subpoena requested confidential materials; and 4) whether the court abused its

---

and to produce documents requested in the subpoena. *See id.*  Martinez alleges this dismissal shows the ultimate irrelevance of the subpoena to any viable claim. *See* Appellant's Reply at 19-20, ECF 16.  I disagree.  Martinez attaches a transcript in which the presiding judge confers with Plaintiffs' counsel, Martinez's counsel, and the appointed Chapter 7 bankruptcy trustee. *See generally* ECF 16-1.  Although Chief Judge Chan decided to end the bankruptcy case, it was because of her conclusion that creditors were unlikely to recover through the bankruptcy estate. *See id.*  She specifically retained jurisdiction over this appeal, recognizing that the requested discovery remained relevant. *See id.* at 10-11.

[4] As Martinez correctly points out, discovery and contempt orders against non-parties are immediately appealable based on the non-party's interest in resolving the dispute, and based on the three tenets of the collateral order doctrine: the order must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and be "effectively unreviewable on appeal from a final judgment." *See* Opening Br. at 13-16, ECF 13 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

[5] *See Gillette v. Warden Golden Grove Adult Corr. Facility*, 109 F.4th 145, 154-55 (3d Cir. 2024) (recognizing an abuse of discretion standard for motions to quash subpoenas and de novo review of their legal conclusions); *see also Shingara v. Skiles*, 420 F.3d 301, 305 (3d Cir. 2005) (same for denials of protective orders); *Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001) (same for awards of attorneys' fees and contempt sanctions).

5

discretion in awarding attorneys' fees and contempt sanctions.  *See* Opening Br. at 17-18, ECF 13.[6]  On each issue, I affirm the Bankruptcy Court's ruling.

### A.  Motion to Quash

Three of Martinez's issues on appeal focus on the Bankruptcy Court's denial of his Motion to Quash the subpoena.

Subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure.  In general, subpoenas compel their recipient to "attend and testify [at depositions,] produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises[.]" Fed. R. Civ. P. 45(a)(1)(A)(iii).  Under Rule 45, the proper scope of a subpoena is controlled by Rule 26's definition of relevance.

A subpoenaed party can move to quash or modify a subpoena under Rule 45(d)(3). Reasons for opposition include when compliance would subject the subpoenaed person to "undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv), or where the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i).

Martinez centers his appeal on these undue burden and confidentiality objections and further argues the overall scope of the subpoena exceeds Rule 26's boundaries.  *See* Opening Br. at 33-34.  Each argument relies on the premise that "[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience" in discovery.  *Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015).  Although Martinez is right about non-

---

[6] When citing to the parties' briefs, I use the page numbers given on ECF.  When citing to the parties' appendices, I use the appendix page numbers offered by the parties, to better mirror the citations offered in the briefs.

parties' heightened protection, his arguments fail because he failed to show evidence before the Bankruptcy Court that he would be injured by compliance or that the subpoena is excessively broad.

### 1. Undue burden

Martinez first argues that the Bankruptcy Court failed to analyze adequately the burden the subpoena places on him as a non-party to the case. He offers that an abuse of discretion may occur where a trial judge neglects to give sufficient attention to a factor that was due substantial weight.[7] When assessing undue burden, courts consider factors such as relevance, the subpoenaing party's need for the materials, breadth, time, burden, and non-party status. *In re Novartis & Par Antitrust Litig.*, No. 2:19-MC-00149, 2019 WL 5722055, at *5 (E.D. Pa. Nov. 5, 2019). Martinez posits that because the Bankruptcy Court did not explicitly analyze and weigh these factors on the record, it neglected factors that were due substantial weight, and thus abused its discretion. *See* Opening Br. at 33-35.

This argument skips a step. Before any weighing of factors takes place, a party seeking to quash a subpoena must make a threshold showing that compliance would cause a "clearly defined and serious injury." *City of St. Petersburg, v. Total Containment, Inc.*, No. 06-20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008). This is a "particularly heavy" burden. *Green v. Cosby*, 314 F.R.D. 164, 170 (E.D. Pa. 2016). Only if the movant meets this burden does the "serve-and-volley of federal discovery rules" require the court to weigh the benefits of compliance against the

---

[7] For this principle, Martinez cites a non-precedential decision of the Third Circuit Court of Appeals. *See* Opening Br. at 32 (citing *Rardon v. Falcon Safety Prods., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023)). The Third Circuit cautions that "[s]uch opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing." Third Cir. Internal Operating Procedures R. 5.7. But there is other persuasive precedent that an abuse of discretion occurs where a judge neglects important factors. *See, e.g.*, *In re Malloy*, No. BR 14-15464, 2022 WL 1488438, at *2 (E.D. Pa. May 11, 2022).

burden imposed on a non-party.  *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014).  Put simply, the movant must show there is a burden worth weighing.

Martinez never showed such a clearly defined and serious injury.  His arguments in the Bankruptcy Court were not "clearly defined," considering Martinez's shifting explanations for non-compliance: he has at various points claimed that compliance would interfere with his work in private equity, then his real estate investments, and then that it was simply too burdensome and irrelevant.  *See, e.g.*, Appellee's App. at 84-87.  Martinez never specified in his briefs what businesses of his would be affected, how many LLCs he was a member of, or even how many documents he anticipated having to review, only repeating "potentially thousands."  This lack of detail also describes no "serious" injury: Martinez mainly talks about time spent complying with the subpoena and unspecified competitive harm.  But general claims of competitive harm are not a basis for undue burden.  *See Med. Tech., Inc. v. Breg, Inc.*, No. 10-MC-00100, 2010 WL 3734719, at *2 (E.D. Pa. Sept. 21, 2010).  Relatedly, the time and energy Martinez committed to resisting the subpoena rather than complying undermines his contention that compliance would be an unreasonably heavy burden.

Faced with Martinez's vague and shifting objections, Chief Judge Chan observed at the time that she had heard "a lot of conclusory statements" from Martinez.  Appellant's App. at 346.  This assessment sufficiently conveys that Martinez never made an initial showing of a serious and clearly defined injury.  Without such a showing, the court was not obligated to reach the stage of the analysis where it would weigh any undue burden against the need for the information under subpoena. It therefore cannot be said that the Bankruptcy Court neglected a factor entitled to significant weight, giving rise to an abuse of discretion.

### 2. *Scope of the subpoena*

Next, Martinez argues the subpoena's scope violates Rule 26's proportionality requirements, because he is a non-party without a direct interest in the litigation and the subpoena sought many documents unrelated to Defendants. *See* Opening Br. at 35-36. Martinez calls it temporally overbroad because it reaches too far back, and substantively overbroad because it covers all of Martinez's construction businesses, not merely interactions with the Defendants and their employees. *See id.* at 36-37.

Under Rule 45 a subpoena must fall within the scope set by Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant considerations include "the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The subpoena and related discovery Plaintiffs seek here, concerning Martinez's construction records, fit within the Rule: Plaintiffs had reason to believe Defendants fraudulently transferred funds, client lists, and other business assets among various corporate aliases and individuals in an effort to evade their creditors and aggrieved ex-customers; Plaintiffs had reason to believe that Martinez had done business with one or more of the suspected fraudulent aliases; for that reason, they asked for construction-related records to identify possible aliases which they

9

had not yet found. *See* Appellant's App. at 140-41.[8]  The Bankruptcy Court was well within its discretion to find that such a broad reach was proportional.

Martinez's arguments about the difficulty of compliance, the need to review "potentially thousands" of documents, also lacks force.  That phrase told the Bankruptcy Court nothing of value about the purported burden on Martinez.  Except for paragraph four, which it could fairly be said was overly broad, the subpoena's text focuses on payments, gifts, and transfers, not, as Martinez has claimed at various points, "nearly every document relating to his real estate businesses over the past five years."  Opening Br. at 10.  Plus, concerns about scope do not support a complete refusal to cooperate with a subpoena, especially when Martinez had multiple opportunities to try to limit the scope: the record shows Plaintiff's counsel and the Bankruptcy Court repeatedly encouraged or requested Martinez to make an informal agreement or formal stipulation as to the subpoena's proper scope.[9]  Having declined, or at least squandered, opportunities to limit the subpoena's scope, Martinez undermines his ability to complain about it again on appeal.  Finally, Martinez's assertion that Plaintiffs should have simply tried harder to secure discovery from Defendants, *see* Opening Br. at 39 n.4, is unconvincing because Defendants' persistent evasiveness is the stated reason for the subpoena.

---

[8] Relatedly, I am unpersuaded by Martinez's argument that the information covered by the subpoena lacks relevance because Plaintiffs lack statutory standing under 11 U.S.C. § 523(a)(2)(A). *See* Appellant's Reply Br. at 14-16.  The Bankruptcy Court acknowledged the viability of Plaintiffs' 523(a) claims in a reasoned ruling on the Motion to Dismiss in 2024. *See* Order of Oct. 9, 2024, Appellant's App. at 88-92.  The nature of Defendants' alleged transfer of ownership and control among Defendant Sinojmeri, ASC, and its potential aliases had enough overlap that Plaintiffs had standing to try and prevent discharge of the debts under 523(a).  Because Defendant Sinojmeri was alleged to be both transferor and transferee in a scheme, and 100% owner of ASC, the information covered by the subpoena had relevance to the debts the discharge of which Plaintiffs sought to prevent.

[9] *See, e.g.*, Appellant's App. at 133-35 (emails from Plaintiffs' counsel to Martinez's counsel offering questions to answer informally in lieu of a deposition); *id.* at 355-56 (Bankruptcy Court observing Plaintiffs' willingness to enter a private stipulation and Martinez expressing his unwillingness).

In total, the record does not demonstrate that the subpoena was so broad that the Bankruptcy Court erred by not quashing or modifying it.

### 3. *Confidentiality objections*

Martinez's last argument focused on the Motion to Quash is that the Bankruptcy Court erred in not quashing or modifying the subpoena based on the allegedly confidential business information it requested.  He bases this argument on Rule 45(d)(3)(B)(i), which permits a court, after a party's motion, to quash or modify a subpoena "if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information[.]"

This argument suffers from multiple defects.  The first and most fundamental is that the record does not reflect that the motion to quash included these grounds for relief.  Martinez cannot argue an abuse of discretion because the judge failed to provide relief he did not seek. Second, although he cited Rule 45(d)(3)(A) in the Bankruptcy Court, which provides protection against protection of privileged materials, he now cites a different portion of the Rule, subsection (d)(3)(B), which protects against disclosure of "a trade secret or other confidential research, development, or commercial information." This presents a serious issue of waiver.[10] These two threshold deficits reveal the fundamental weakness in Martinez's position overall, his failure to argue with precision and clarity before Chief Judge Chan.

---

[10] Martinez did make very general assertions of confidentiality in his Motion for Protective Order, followed by a demand for a balancing of burden and benefit under Rule 45 generally. *See* Appellant's App. at 116.  However, "for parties to preserve an argument for appeal, they must have raised the same argument in the District Court—merely raising an issue that encompasses the appellate argument is not enough. Consequently, the degree of particularity required to preserve an argument is exacting." *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992).  This argument was too broad to preserve an argument under Rule 45(d)(3)(B) and, as discussed below, far too sparse to describe a serious injury from compliance.

Arguments under subsection (d)(3)(B) of Rule 45 require the same threshold showing as the undue burden analysis discussed above. *See Drywall*, 300 F.R.D. at 239.  When assessing confidentiality and trade secrecy under Rule 45, "a court may consider such things as the extent to which the information is known both inside and outside the business; the precautions taken to guard the secrecy of the information; the value of the information; and the amount of time and expense it would take for others to acquire and duplicate the information." *Id.* at 242.

Here, Martinez's vague allusions to his many LLCs and other entities and their confidential financial information did not offer enough detail for the Bankruptcy Court to make this threshold finding when considering the Motion to Quash, let alone weigh the cost against the benefit. Martinez elaborated on his confidentiality concerns somewhat in his later motions, alluding to "[c]onfidential agreements with third-parties," "proprietary" pricing and bidding information, trade secrets, and banking and financial records.  Appellant's App. at 278.  At that time, Plaintiffs again expressed their willingness to stipulate to not sharing financial and proprietary information, but argued that Martinez still needed to explain more about the harm that would come from disclosing other requested information; for example, merely pointing to a private confidentiality agreement did not automatically entitle him to protection, and it was not clear what "trade secrets" Martinez sought to protect regarding his renovation strategies and vendor relationships.  *See* Appellee's App. at 144-47.  Without much detail with which to measure the cost, privacy, and other factors of the allegedly confidential documents, I cannot say that the Bankruptcy Court abused its discretion in denying Martinez's motions.

### B. Contempt sanctions

Rule 45(g) provides that "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the

subpoena or an order related to it."  Martinez argues that because the order denying the Motion to Quash was wrongly decided, so is the resulting contempt order.  *See* Opening Br. at 51 (citing *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1183 (3d Cir. 1976)).  Because I affirm the underlying Order, it follows that Martinez's consistent refusal to obey it warranted a finding of contempt. In that regard, what stands out from the record is Martinez's wholesale refusal to cooperate in any way, and unwillingness to engage in a meaningful process to provide relevant information while protecting interests he sought to assert.  Even valid concerns about proprietary information do not provide an impenetrable shield frustrating all discovery.

### C.  Attorneys' Fees

Finally, Martinez urges this Court to reverse the award of fees for the services of one of Plaintiffs' attorneys, who is not admitted to practice in the Eastern District or the Bankruptcy Court.  *See* Opening Br. at 45-51.  In general, bankruptcy courts are not bound by the local rules of the districts in which they sit.  *See In re Flanagan*, 999 F.2d 753, 758 n.7 (3d Cir. 1993). Plaintiffs are correct that the Bankruptcy Court of the Eastern District of Pennsylvania has never adopted Rule 83.5.2, the rule at the heart of Martinez's argument, despite adopting neighboring local rules.  *See* Appellee's Suppl. Br. at 48-51, ECF 20.  And the fee award here would redound to the benefit of Plaintiffs, not their counsel, and it makes no sense to penalize a client for an attorney's purported violation of a local rule, particularly when the Chief Judge of the Bankruptcy Court deemed counsel's status irrelevant.

Martinez's arguments against the fee award center on *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443 (E.D. Pa. 2014*)*.  As a threshold matter, the Bankruptcy Court was not obligated to follow *Gsell;* it would at most constitute persuasive authority. More importantly, *Gsell* was litigated under the Fair Debt Collection Practices Act, a fee-shifting statute, and the issue was

whether a non-admitted attorney who entered a default judgment for statutory damages of $1,000 was entitled to petition for fees. The Court concluded that the attorney willfully violated the Local Rule requiring admission *pro hac vice* and denied fees as a sanction for attorney misconduct. *See id.* at 452. *Gsell* has no persuasive force here, where it is Plaintiffs who would ultimately benefit from any fee award.

**IV.    Conclusion**

For the reasons set forth above, the Bankruptcy Court's orders are affirmed. An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge